IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

| | |
|---|---|
| Sammie H. Miller, Sr., ) | |
| ) | C/A No. 2:09-1938-MBS |
| Plaintiff, ) | |
| ) | |
| vs. ) | |
| ) | **OPINION AND ORDER, INCLUDING** |
| Cooper/T. Smith Stevedoring Company, ) | **ORDER TO SHOW CAUSE** |
| Inc., The Doe Company, Rosbillo S. Bilbao, ) | |
| and Ricky Mundy, ) | |
| ) | |
| Defendants. ) | |
| _____ ) | |

Plaintiff Sammie H. Miller, Sr. is an employee of Defendant Cooper/T. Smith Stevedoring Company, Inc. ("Cooper/T. Smith"). Plaintiff is employed in Charleston, South Carolina as a longshoreman through the International Longshoreman's Association (the "Union"). Plaintiff filed the within action in the Court of Common Pleas in Charleston County on June 3, 2009. Plaintiff alleges that on June 13, 2006, Andrew Barrett, as agent for Carolina Shipping Company, sent certain correspondence to Cooper/T. Smith that contained false, derogatory, and defamatory statements. Plaintiff alleges that Cooper/T. Smith and Defendant Ricky Mundy, an employee of Cooper/T. Smith, published Barrett's letter to the Union on June 15, 2006. Plaintiff further alleges that Cooper/T. Smith, Mundy, and others published another letter to the Union on December 11, 2006 that contained false, derogatory, and defamatory statements. Plaintiff alleges that, as a result of these actions, he was demoted, has lost income and the opportunity for future employment, and suffered humiliation and embarrassment. Plaintiff asserts two cases of action and seeks actual and punitive damages. See generally Entry 1-2, 4-10.

Cooper/T. Smith and Mundy removed the action on July 22, 2009 on the grounds of federal

question jurisdiction. See 28 U.S.C. §§ 1331 and 1441(b).[1] Specifically, Cooper/T. Smith and Mundy contended that the state law defamation claims are preempted by Section 301 of the Labor Management Relations Act ("LMRA"), 29 U.S.C. § 185(a) and 28 U.S.C. § 1337.[2]

This matter is before the court on motion to dismiss filed by Cooper/T. Smith and Mundy on July 29, 2009. Plaintiff filed a response in opposition to the motion to dismiss on August 17, 2009, to which Cooper/T. Smith and Mundy filed a reply on September 3, 2009. On February 2, 2010, the court gave notice to these parties that it intended to treat the motion to dismiss as a motion for summary judgment pursuant to Fed. R. Civ. P. 12(d). Plaintiff, Cooper/T. Smith and Mundy were granted until February 26, 2010 to present all the material that is pertinent to the motion. The parties filed no additional information. Accordingly, the motion is ripe for adjudication.

I. DISCUSSION

Rule 56 of the Federal Rules of Civil Procedure provides that summary judgment shall be granted when a moving party has shown "[that] the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The evidence presents a genuine issue of material fact if a "reasonable jury could return a verdict for the non-moving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 251-52 (1986). The moving party bears the burden of proving that there are no facts from which a jury could draw inferences favorable to the non-moving party. Celotex Corp. v. Catrett, 477

---

[1] Defendants The Doe Company and Rosbillo S. Bilbao have not made an appearance in this case.

[2] Cooper/T. Smith and Mundy further contended that the case is removable under the court's diversity jurisdiction. See 28 U.S.C. §§ 1332, 1441.

2

U.S. 317, 322-23 (1986). Once the moving party makes this showing, the opposing party must set forth specific facts showing there is a genuine issue for trial. Id. Summary judgment should be granted only in those cases where it is perfectly clear that there remains no genuine dispute as to material fact and inquiry into the facts is unnecessary to clarify the application of the law. McKinney v. Bd. of Trustees of Md. Cmty. College, 955 F.2d 924, 928 (4th Cir. 1992).

Law/Analysis

Typically, "the well-pleaded complaint rule" applies in determining whether a complaint raises a federal question, so that removal is proper. Freeman v. Duke Power Co., 114 F. App'x 526, 530 (4th Cir. 2004). A corollary to the well-pleaded complaint rule provides that an action may be removed, notwithstanding the absence of a federal question in the plaintiff's complaint, if a federal statute wholly displaces the state-law cause of action through complete preemption. Id. (quoting Aetna Health Inc. v. Davila, 542 U.S. 200, 207 (2004)). Thus, even though the complaint alleges only state law claims, the complaint "'is in reality based on federal law'" if the state law claims are completely preempted by federal law. Id. (quoting Aetna, 542 U.S. at 207). With reference to the within action, "[t]he preemptive force of § 301 of the LMRA is unquestionably broad." Id. (citing Franchise Tax Bd. v. Laborers Vacation Trust, 463 U.S. 1, 23-24 (1983)). Section 301 completely displaces state law causes of action related to contracts between employers and labor organizations, as well as other claims the resolution of which depends substantially on the interpretation of a collective bargaining agreement. Id. at 530-31.

Plaintiff asserts that his defamation claims are not preempted by Section 301 of the LMRA because Cooper/T. Smith is not a signatory to a collective bargain agreement (CBA) known as the "Yellow Book." The Yellow Book is a CBA between the South Carolina Stevedores Association

3

and the Union. It is undisputed that Cooper/T. Smith is not a member of the South Carolina Stevedores Association. Plaintiff contends that, instead, a "Memorandum of Understanding" entered into by Cooper/T. Smith and the Union on April 25, 2006 solely governs their respective rights and obligations. The Memorandum of Understanding contains no provisions for arbitration or grievances. The Memorandum of Understanding also contains no references to the Yellow Book. Thus, according to Plaintiff, Section 301 of the LMRA does not preempt his causes of action for defamation because no CBA governs his relationship with Cooper/T. Smith. The court disagrees.

Cooper/T. Smith and Mundy have provided the court with affidavits of Ronnie Turner, Charleston operations manager for Cooper/T. Smith (Entry 24-2), and Kenneth Riley, President of Local 1422, International Longshoremen's Association, AFL-CIO (Entry 24-1). Turner attests that Cooper/T. Smith employs Local 1422 employees pursuant to a CBA with the Union. According to Turner, the CBA includes the parties' customs and practices as to the terms and conditions of employment, as well as written documents such as the Memorandum of Understanding and certain provisions of the Yellow Book. Entry 24-2, ¶ 3. Turner avers that it is Cooper/T. Smith's custom and practice to resolve employee grievances through a grievance process, and that part of this process requires Cooper/T. Smith to communicate employee misconduct issues to the Union to provide the Union an opportunity to represent the employee. Id. ¶ 5. Turner notes that under the Memorandum of Understanding, Cooper/T. Smith reserves the right to manage its employees' conduct. According to Turner, a necessary part of this right is the ability to conduct investigations of union employee misconduct, and to communicate with the Union regarding this process and its findings. Id. ¶ 7. Turner attests that Cooper/T. Smith's reports to the Union regarding employee misconduct are a necessary part of their working relationship. ¶ 10.

Riley avers that he negotiated and currently administers the CBA between the Union and Cooper/T. Smith (Entry 24-1, ¶ 3). Riley avers that the Yellow Book generally governs working conditions at the Port of Charleston. Id. ¶ 5. Riley notes that although Cooper/T. Smith is not a member of the South Carolina Stevedores Association and is not a signatory to the Yellow Book, Cooper/T. Smith and the Union follow various Yellow Book provisions, including holiday, drug testing, and no lockout and strike provisions, as a matter of custom and practice. Id. ¶ 6. Riley attests that Cooper/T. Smith and the Union have agreed to resolve employee grievances through a grievance process, and as part of this process Cooper/T. Smith communicates employee misconduct issues to the Union to provide the Union an opportunity to represent the employee. Id. ¶ 7. Riley further attests that the Union represented Plaintiff in or around June 2006 with respect to the information provided in Barrett's letter to Cooper/T. Smith. See id. ¶ 9. Riley attests that Cooper/T. Smith reports employee performance issues to the Union pursuant to the Union's role as collective bargaining representative. Id. ¶ 11. Riley contends that Cooper/T. Smith's reports to the Union regarding employee misconduct are a necessary part of their working relationship under their CBA. Id. ¶ 12.

A CBA consists, in addition to its express provisions, of an "'industrial common law–the practices of the industry and the shop–[which] is equally a part of the collective bargaining agreement although not expressed in it." McCormick v. AT&T Tech., Inc., 934 F.2d 531, 536 (4th Cir. 1991) (quoting United Steelworkers v. Warrier & Gulf Navigation Co., 363 U.S. 574, 581-82 (1960)). The Fourth Circuit has instructed that:

> collective bargaining agreements are not interpreted under traditional rules of contract but under a federal common law of labor policy. Therefore, in order to interpret such an agreement, it is necessary to consider the scope of other related

collective bargaining agreements, as well as the practice, usage and custom pertaining to all such agreements.

Keffer v. H.K. Porter Co., Inc., 872 F.2d 60, 62 (4th Cir. 1989)).

Applying this framework, the court concludes that, contrary to Plaintiff's position, Cooper/T. Smith and the Union did operate pursuant to a CBA that included the Memorandum of Understanding, provisions of the Yellow Book, and industry practices at the Port of Charleston. The CBA between Cooper/T. Smith and the Union governed Plaintiff's employment. Plaintiff's contentions are without merit.

A nonsignatory to a CBA can invoke § 301 preemption as a defense to a plaintiff's state law claims where interpretation of the CBA is required for resolution, or when resolution of the state law claim is "inextricably intertwined" with consideration of the terms of the labor contract. Mullins v. Int'l Union of Operating Eng'rs Local No. 77, 77 F. Supp. 2d 655, 668 (E.D. Va. 2002) (citing cases). In particular, where an investigation is undertaken pursuant to a CBA, preemption under Section 301 of the LMRA is required. Id. (citing cases). In this case, Plaintiff's defamation claims are "inextricably intertwined" with consideration of the terms of the Yellow Book. The defamation claims are based upon communication between Cooper/T. Smith and the Union regarding alleged job misconduct. A resolution of the matter mandates reference to the collective bargaining agreement to determine to what extent Cooper/T. Smith possessed an obligation to communicate the alleged employee misconduct to the Union.

According to the affidavits of Riley and Turner, Cooper/T. Smith was required to report the Barrett communication to the Union to afford the Union the opportunity to represent Plaintiff. The court concludes that Plaintiff's defamation claims are preempted by § 301 of the LMRA as a matter

of law.

It is well-settled that an employee must attempt to exhaust any grievance or arbitration remedies provided in the applicable CBA prior to bringing suit against his employer for breach of the CBA. Trent v. Bolger, 837 F.2d 657, 659 (4th Cir. 1988). The applicable six-month limitations period for filing an action in federal court is tolled pending the exhaustion of that administrative remedy. Id.; see 29 U.S.C.A. § 160. Plaintiff asserts that, because the Memorandum of Understanding contains no grievance or arbitration provisions, he is not required to exhaust his administrative remedies. Plaintiff contends, however, that he filed both a grievance and an action before the National Labor Board and therefore has fulfilled his obligation to do so.

Assuming for purposes of the within motion that Plaintiff exhausted the grievance or arbitration remedies available to him, Plaintiff did not file the within action until June 3, 2009, in excess of two years after he asserts he filed a Charge with the National Labor Relations Board regarding the December 2006 defamation claim. See Entry 19-6, 2 (Charge filed 5/3/07).[3] There is no foundation in the record to support a finding that Plaintiff filed the with complaint before the expiration of the applicable six-month limitations period. Accordingly, Plaintiff's is precluded from asserting his claims under § 301 of the LMRA.

## II. CONCLUSION

For the reasons stated, the court concludes that Plaintiff's state law causes of action are preempted by § 301 of the LMRA. The court further concludes that Plaintiff's claims under § 301 are barred by the applicable six-month limitations period. Accordingly, Cooper/T. Smith and

---

[3] It does not appear that Plaintiff filed a charge with the National Labor Relations Board regarding the June 2006 event.

7

Mundy's motion to dismiss (Entry 6), which has been converted by the court to a motion for summary judgment, is **granted.**

It does not appear that Plaintiff has served Defendants The Doe Company and Rosbillo S. Bilbao. Plaintiff alleges in the complaint that The Doe Company is a fictitious name for the registered owner of the vessel M.V. Star Bergen, and that Rosbillo S. Bilbao, whose address is unknown, is the commanding officer of the M.V. Star Bergen. Plaintiff is ordered to show cause within fifteen (15) days of the date of entry of this order why The Doe Company and Rosbillo S. Bilbao should not be dismissed pursuant to Fed. R. Civ. P. 4(m), which provides:

> (m) Time Limit for Service. If a defendant is not served within 120 days after the complaint is filed, the court—on motion or on its own after notice to the plaintiff—must dismiss the action without prejudice against that defendant or order that service be made within a specified time. But if the plaintiff shows good cause for the failure, the court must extend the time for service for an appropriate period. This subdivision (m) does not apply to service in a foreign country under Rule 4(f) or 4(j)(1).

**IT IS SO ORDERED**.

/s/ Margaret B. Seymour
United States District Judge

March 31, 2010

Columbia, South Carolina